UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TERRILL A. BIRD,

                    Petitioner,                         Case No. 2:08-cv-265

v.                                                      Honorable R. Allan Edgar

CATHY BAUMAN

                    Respondent.
_____/

## REPORT AND RECOMMENDATION

            This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254.  Petitioner initially filed this action on October 30, 2008.  On June 9, 2011, the court granted

Petitioner's motion to hold the petition in abeyance to allow him to present unexhausted claims in

the state courts (docket #55).  On April 20, 2012, the court ordered that the stay be lifted (docket

#61) and Petitioner filed an amended petition on May 24, 2012 (docket #63).

            Petitioner was convicted of two counts of first-degree murder, kidnaping, and

unlawful driving away of a motor vehicle.  Petitioner was sentenced as an habitual offender, third

offense, to life imprisonment without the possibility of parole for the two murder convictions, life

imprisonment without the possibility of parole for kidnaping, and a term of 80 to 120 months

imprisonment for an unlawful driving away conviction.  In his *pro se* amended petition (docket #63),

Petitioner raises eight grounds for relief, as follows:

I.      Petitioner is entitled to a new trial where the trial court erred when it denied Petitioner's request to be represented by retained counsel and denied the request for an adjournment.

II.     Petitioner was denied effective assistance of counsel where there was no objection to the admission of evidence.

III.    Defendant-Appellant was denied his constitutional right to the effective assistance of appellate counsel when appellate counsel failed to raise meritorious claims of constitutional violation clearly shown on the record and transcripts.

IV.     The lack of clear demarcation between detective Harrell Smith's fact and expert testimony and trial court's failure to instruct the jury adequately on how to weigh the fact and expert testimony deprived the defendant of his due process of right and a fair trial.  Alternatively, counsel was ineffective for failure to request the appropriate instructions.

V.      Defendant-Appellant was denied his constitutional right to due process when the prosecutor committed prosecutorial misconducts, and the effective assistance of counsel or failure to investigate and object.

        A.      Defendant-appellant was denied a fair and impartial trial when the prosecutor willingly used perjury [sic] testimony and the effective assistance of counsel, when trial counsel failed to investigate.

        B.      Defendant-appellant was denied a fair and impartial trial when the prosecutor made statements to facts that were not entered into evidence of part of the record in her closing argument, and the effectiveness [sic] assistance of counsel when trial counsel failed to object.

VI.     The evidence presented in [sic] insufficient to sustain defendant's conviction of murder; alternatively, the verdict is against the "great weight of the evidence," and effective assistance of counsel, constitutes a denial of due process and a clear miscarriage of justice.

VII.    Defendant-appellant was denied his right of confrontation by the erroneous admission of Christine Steepleton's Michigan State Police Footwear Analysis, Laboratory Report into evidence, and the effective assistance of counsel.

VIII.   The cumulative effective [sic] of all the errors combined in this motion, and at the trial, amounts to reversible errors, and denial of a fair and impartial trial, and a direct appeal.

Respondent has filed an answer to the amended petition (docket #67).  Upon review and applying the AEDPA standards, the undersigned recommends that Petitioner's application for habeas corpus relief be denied.

Following his conviction, Petitioner filed a direct appeal in the Michigan Court of Appeals.  The Michigan Court of Appeals stated:

> Melissa Friar and her eight-year-old daughter Alana were found dead in their home. Melissa's four-year-old son Jonathan was found several miles away, on the back porch of a vacant home, the same morning. Melissa's ex-boyfriend, Shannon Bell, is Jonathan's father and defendant's half brother. Defendant later admitted taking both Jonathan and a car, which Melissa borrowed from her mother the night before the bodies were found. Defendant, however, denied killing Melissa or Alana. He claimed that drug dealers murdered the two and forced defendant and Jonathan to leave with them in the borrowed car.

*People v. Bird*, Michigan Court of Appeals No. 269154 (Aug. 21, 2007) (Docket #26).

In his direct appeal, Petitioner asserted that he was denied his constitutional right to counsel because the trial court denied his motion to adjourn the trial and allow a substitution of counsel and that his counsel was ineffective in failing to object to the admission of evidence.  The Michigan Court of Appeals denied Petitioner's appeal.  *Id.*  Petitioner subsequently filed an application for leave to appeal to the Michigan Supreme Court, which was denied on January 8, 2008.  *People v. Bird*, Michigan Supreme Court No. 135060 (Jan. 8, 2008).

Petitioner subsequently filed a motion for relief from judgment in the trial court, which contained his present claims.  This was the first time that Petitioner raised claims IV through VIII in the state courts.  The trial court denied the motion for relief from judgment on December 10, 2010, pursuant to MCR 6.508(D), noting that absent a showing of good cause, it could not grant the

relief sought because the arguments made in the motion for relief from judgment could have been raised on appeal.  The court further stated:

> Defendant does not make a good cause showing why he did not raise these issues on appeal.  He merely contests the higher courts' decisions at the trial court level.  Even if Defendant had addressed these issues on appeal, this Court cannot grant the relief where the "grounds for relief were decided against the defendant in a prior appeal MCR 6.508(D)(2)."

*People v. Bird*, Kent County Circuit Court No. 05-08901-FC (Dec. 10, 2010), Docket #71.

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, which was denied pursuant to MCR 6.508(D) on May 27, 2011.  *People v. Bird*, Michigan Court of Appeals No. 302888 (May 27, 2011).  The Michigan Supreme Court subsequently denied leave to appeal on the basis of MCR 6.508(D).  *People v. Bird*, Michigan Supreme Court No. 143438 (Mar. 5, 2012).  Petitioner filed the instant amended habeas corpus application on May 24, 2012.

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

- 4 -

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411;

*accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.

Where the state appellate court has issued a summary affirmance, it is presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).  However, where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review.  *See Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

As noted above, Petitioner asserts that the trial court erred in denying Petitioner's request to substitute appointed counsel for an attorney retained by his family on the day of trial.  The

- 6 -

Sixth Amendment guarantees the right to assistance of counsel in criminal proceedings to ensure that the criminal defendant receives a fair trial. *Wheat v. United States*, 486 U.S. 153, 158-159 (1988). The inquiry focuses on the adversarial relationship and whether the defendant is represented by an effective advocate, as opposed to the defendant's personal relationship with his lawyer. *Id.*, *Morris v. Slappy*, 461 U.S. 1 (1983). The right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney. *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989). Although a criminal defendant who desires and is financially able to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice," that right is a qualified right. *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (*citing Powell v. Alabama,* 287 U.S. 45, 53 (1932) and *Wheat v. United States,* 486 U.S. 153, 159 (1988)).

> The important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court. *See Lockett v. Arn,* 740 F.2d 407, 413 (6th Cir.1984), *cert. denied,* 478 U.S. 1019, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986); *United States v. Fowler,* 605 F.2d 181, 183 (5th Cir.1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980).

*U.S. v. Krzyske*, 836 F.2d 1013, 1017 (1988).

> The Michigan Court of Appeals addressed this claim and found it to be without merit:

> The constitutional right to counsel encompasses the right of a defendant to choose his own retained counsel. US Const, Am VI; US Const, Am XIV; 1963 Const, art 1, §§ 13 and 20; *US v. Gonzalez-Lopez,* --- U.S. ----; 126 S Ct 2557, 2561; 165 L.Ed.2d 409 (2006); *Akins, supra* at 557. However, the right is not absolute, and a court must balance the defendant's right to choice of counsel against the public's interest in the prompt and efficient administration of justice. *Id.* Furthermore, a trial should not be adjourned except for good cause

- 7 -

shown. *People v. Sekoian,* 169 Mich.App 609, 613; 426 NW2d 412 (1988). To determine whether there is good cause to adjourn, the Court considers whether (1) defendant is asserting a constitutional right; (2) there is a legitimate reason to assert the right; (3) defendant was negligent for not asserting the right earlier; (4) defendant requested other adjournments; and (5) defendant has demonstrated prejudice from the trial court's refusal to adjourn. *People v. Wilson,* 397 Mich. 76, 80; 243 NW2d 257 (1976); *Akins, supra; Sekoian, supra* at 613-614. A trial court may not "unreasonably interfere with a client's right to be represented by the attorney he has selected" solely in the name of calendar control. *Wilson v. Mintzes,* 761 F.2d 275, 280-281 (CA 6, 1985). If the deprivation of defendant's right to retained counsel of his choice is erroneous, it is a structural error requiring reversal. *Gonzalez-Lopez, supra* at 2564.

We find that the trial court did not err when it denied the motion for an adjournment. Defendant waited to assert his right to hired counsel the day before trial. He claimed he could not have asserted his right earlier because his family had just provided the funds to hire counsel. Regardless, defendant's proffered rationale for new counsel was only that he thought he would get a better trial with retained counsel. He offered no specific reason for dissatisfaction with his appointed counsel. He did not mention that there were irreconcilable differences and did not complain that appointed counsel was inadequate. In fact, his appointed counsel did not wish to withdraw, and defendant appears to concede on appeal that appointed counsel was competent. Moreover, the attorney of defendant's choice was not available for trial on the scheduled day and did not return a telephone call from the court seeking to determine if he was ready to proceed as counsel. Further, the only prejudice defendant asserts is that he was forced to proceed with counsel not of his own choosing. Finally, the trial court stated that defendant's retained counsel could serve as co-counsel once he appeared before the court. Thus, defendant was not precluded from using his hired counsel's services. After examining the record, we conclude that the trial court did not abuse its discretion when it denied the motion to adjourn the trial. Good cause was not shown. Additionally, defendant's right to counsel of his own choice was not violated. The trial court balanced defendant's last minute request to hire counsel with the public's interest in the prompt and efficient administration of justice. *Akins, supra.*

Defendant argues that the trial court's "compromise" of allowing retained counsel to act as co-counsel did not cure the violation of his

> right to the counsel of his choosing. He cites *People v. Humbert,* 120 Mich.App 195; 327 NW2d 435 (1982). *Humbert* is distinguishable from this case because the trial court there held that retained counsel was limited to consulting with appointed counsel; he could not present evidence or question witnesses at the preliminary examination. *Id.* at 197-198. No such limits were placed on defendant's choice of counsel. The trial court in this case struck an appropriate balance between the defendant's rights and the need to proceed as scheduled, given the lack of prior notice and the prosecution's readiness for trial, with its ruling that retained counsel could act as co-counsel. *Akins, supra.*

*People v. Bird*, Michigan Court of Appeals No. 269154 (Aug. 21, 2007) (Docket #26).

The undersigned concludes that the Michigan Court of Appeals' decision on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that his trial attorney was ineffective for failing to object to testimony that during the preliminary hearing, the victim's 4-year-old son attempted to hide and crawl out of the courtroom when he saw Petitioner. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the

challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court recently has observed, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *see also Jackson v. Houk*, No. 08-3677, slip op. at 21-22 (6th Cir. Jul. 24, 2012) (stating that the "Supreme Court has recently again underlined the difficult of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Richter*, 131 S. Ct. at 786).

In addressing this claim, the Michigan Court of Appeals stated:

> To establish a claim of ineffective assistance of counsel, defendant must show that his counsel's performance was deficient under an objective standard of reasonableness, and that, but for counsel's error, the outcome of the trial would have been different and therefore, he was denied a fair trial. *People v. Grant,* 470 Mich. 477, 485-486; 684 NW2d 686 (2004). Defendant bears a "heavy burden" to overcome the presumption that counsel was effective. *People v. Garza,* 246 Mich.App 251, 255; 631 NW2d 764 (2001). Counsel is not ineffective for "failing 'to advocate a meritless position.' " *People v.*

- 10 -

*Mack,* 265 Mich.App 122, 130; 695 NW2d 342 (2005), quoting *People v. Snider,* 239 Mich.App 393, 425; 608 NW2d 502 (2000).

Defendant specifically argues that counsel should have objected because the challenged testimony was inadmissible hearsay, was more prejudicial than probative, and violated defendant's confrontation rights as articulated in *Crawford v. Washington,* 541 U.S. 36; 124 S Ct 1354; 158 L Ed 177 (2004).

Nonverbal actions and conduct may be hearsay if the conduct is intended to be an assertion. The first step to determine whether conduct is hearsay to determine whether an assertion is actually intended by the conduct. *People v. Watts,* 145 Mich.App 760, 762; 378 NW2d 787 (1985). The party claiming that the conduct was a statement and hearsay bears the burden of showing that an intention existed. *Id.* "Ambiguous cases will be resolved in favor of admissibility." *Id.* In *People v. Davis,* 139 Mich.App 811, 812-813; 363 NW2d 35 (1984), this Court held that testimony that the child victim burst into tears when confronted about the defendant's sexual abuse was not hearsay because there was no "indication that the victim intended to make an assertion by her spontaneous act of crying." We likewise conclude in this case that Jonathan did not intend an assertion by his spontaneous attempt to escape the courtroom. Four-year-old Jonathan was afraid, but defendant has not provided any evidence that Jonathan intended an assertion by his conduct. The evidence was not a "statement" and thus, was not inadmissible hearsay.

Defendant also argues that the testimony about Jonathan's behavior was more prejudicial than probative and merely inflamed the jury. Evidence is admissible if it is relevant and its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury...." MRE 402; MRE 403. All evidence is prejudicial to some extent to one of the parties. *People v. Mills,* 450 Mich. 61, 75; 537 NW2d 909 (1995), mod 450 Mich. 1212 (1995). "Damaging" is not the equivalent of unfair "prejudice." *Bradbury v. Ford Motor Co,* 123 Mich.App 179, 185; 333 NW2d 214 (1983), mod 419 Mich. 550 (1984). Rather, unfair prejudice is when there is a danger that marginally probative evidence will be given undue weight by the jury, and it would be inequitable to allow its use. *Mills, supra* at 75-76. In this case, there was some indication that Jonathan saw what happened on the night his mother and sister were killed. He was unable to testify at trial, but his fear of

- 11 -

> his uncle was much more than marginally probative to the fact that his uncle was involved in the crimes. Defendant testified that "If I did it, my nephew would have seen it all." Jonathan's behavior supported that this was true. Moreover, it disproved testimony that Jonathan was "chillin" in the back seat of the car after the murders. The evidence was not merely marginally probative evidence, and the record does not support that any prejudice substantially outweighed the probative value.

*People v. Bird*, Michigan Court of Appeals No. 269154 (Aug. 21, 2007) (Docket #26).

As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

The Michigan Court of Appeals interpreted state law to find that Jonathan's behavior was not hearsay and that it was highly probative on the issue of Petitioner's guilt. As noted by Respondent, the United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal

court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*citing Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975)).  Therefore, the Michigan Court of Appeals' decision on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Respondent asserts that claims IV through VIII are barred by the doctrine of procedural default and that Petitioner cannot demonstrate cause and prejudice through ineffective assistance of appellate counsel (Claim III), nor that failure to review the claims would result in a fundamental miscarriage of justice.  As stated by the trial court in its denial of Petitioner's motion for relief from judgment, the grounds argued in the motion were already considered and denied on appeal, or could have been raised on appeal and were not and that Petitioner failed to establish good cause for failure to raise those issues on initial appeal.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir.

2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

Where a petitioner procedurally defaults his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Although there may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question," *see Lee v. Kemna*, 534 U.S. 362, 376 (2002), this case does not fall within that "limited category." *Id.*

The Supreme Court repeatedly has recognized, however, that "'the adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather adequacy is itself a federal question.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (other internal quotations omitted). In a small

category of cases, the asserted state ground may be inadequate to block adjudication of a federal

claim.  For instance, substantial compliance with a state court rule may be adequate when the trial

court's ruling would not have been affected by perfect compliance with the state rule and when no

published state law decision mandates flawless compliance with the state court rule.  *Lee v. Kemna*,

534 U.S. 362, 382 (2002).  Another example is when the state court requires a contemporaneous

objection to jury instruction and counsel makes an objection during a pretrial motion to dismiss,

consideration of the federal due process claim is not blocked because the rule serves "no perceivable

state interest."  *Osborne v. Ohio*, 495 U.S. 103, 124 (1990).

Further, the Supreme Court clarified the laws governing procedural default in two

recent decisions, *Beard v. Kindler*, 558 U.S. 53, 130 S. Ct. 612 (2009), and *Walker v. Martin*, 131

S. Ct. 1120 (2011).  In *Beard*, the Supreme Court held that, "a discretionary state procedural rule can

serve as an adequate ground to bar federal habeas review," because it can be considered "firmly

established."  *Beard*, 130 S. Ct. at 618.  Extending the precedent it set in *Beard*, in *Walker* the

Supreme Court emphasized the practical importance of "preserving the flexibility" of states'

discretionary procedural rules.  *See Walker*, 131 S. Ct. 1120, No. 09-996, slip op. at 2.  Thus, the

Supreme Court held in *Walker* that even wholly discretionary state procedural rules may constitute

adequate state grounds for foreclosing federal review of a habeas claim.  *See id.* at 8.  *See also Stone*

*v. Moore*, No. 08-4460, slip op. at 5 (6th Cir. Apr. 29, 2011) (applying *Beard* and *Walker* to Ohio

discretionary rule on delayed applications for leave to appeal).

To determine whether Petitioner has been denied relief based on a procedural default,

we look to the last "reasoned judgment rejecting the [federal] claim."  *Ylst*, 501 U.S. at 803.  The

doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and

- 15 -

expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). However, in *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010), the Sixth Circuit, in an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking MICH. CT. R. 6.508(D) are unexplained orders within the meaning of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Such form orders are presumed to uphold or reject the last reasoned decision below. *Guilmette*, 2010 WL 4117281, at **4 (citing *Ylst*, 501 U.S. at 803). As a result, absent an explained decision from some Michigan court applying Rule 6.508(D), the federal court may not invoke procedural default to dispose of a habeas claim that has been rejected by the Michigan courts on the grounds of MCR 6.508(D).

As noted above, the trial court denied Petitioner's motion for relief from judgment based on MCR 6.508(D), specifically finding that Petitioner could have raised the arguments in his direct appeal and did not show good cause for his failure to raise them. The trial court further found that even if Petitioner had addressed the issues on appeal, the court could not grant him relief where the claims for relief were decided against Petitioner in a prior appeal. *People v. Bird*, Kent County Circuit Court No. 05-08901-FC (Dec. 10, 2010), Docket #71. This denial was subsequently affirmed by the Michigan Court of Appeals and the Michigan Supreme Court. *People v. Bird*, Michigan Court of Appeals No. 302888 (May 27, 2011); *People v. Bird*, Michigan Supreme Court No. 143438 (Mar. 5, 2012). In the opinion of the undersigned, the opinion of the trial court on Petitioner's motion for relief from judgment constitutes an explained decision applying Rule 6.508(D). Therefore, claims IV - VIII are procedurally defaulted.

In Petitioner's third claim, he asserts that his appellate counsel was ineffective for failing to raise numerous "meritorious" issues on appeal. Therefore, it appears that Petitioner is

seeking to overcome the procedural default by asserting that his appellate counsel was ineffective for failing to raise claims IV - VIII in his direct appeal. To serve as cause to excuse the default, a claim of ineffective assistance of counsel must be properly exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell*, 274 F.3d at 349; *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001). Petitioner raised his claim of ineffective assistance of appellate counsel in his motion for relief from judgment and in all levels of appellate review; thus, the claim was exhausted. However, because review of the claim was denied by the Michigan appellate courts pursuant to MICH. CT. R. 6.508(D), the claim also is procedurally defaulted. Nevertheless, Petitioner's claim of ineffective assistance of appellate counsel may serve as cause to excuse a procedural default. *See Munson*, 384 F.3d at 316; *Deitz v. Money*, 391 F.3d 804, 810 (2004).

Petitioner's appellate attorney failed to raise issues IV - VIII in his direct appeal to the Michigan Court of Appeals. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

- 17 -

In claim IV, Petitioner asserts that the trial court's failure to issue a jury instruction on expert testimony with regard to Detective Smith violated his due process rights. Moreover, Petitioner contends that his trial counsel was ineffective in failing to request an expert testimony instruction. A state court's interpretation of the propriety of a jury instruction under state law typically does not entitle a habeas petitioner to relief. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012). Instead, Petitioner must show that the error in instructing the jury "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the asserted error in the jury instructions violated federal law. *Id.*

Petitioner claims that the following testimony constituted expert testimony which required a jury instruction to that effect:

| [Prosecutor]: | Now, there's been some testimony that there was a hair found at the autopsy on Melissa Friar. As the lead detective, was that hair of significance to be submitted? |
|---|---|
| [Detective Smith]: | No, it was not. |
| [Prosecutor]: | Why wasn't it? |
| [Detective Smith]: | It could have came from anyone. |
| [Prosecutor]: | Well, I mean, did it look like – did it look like it could have belonged to the perpetrator? |

- 18 -

[Detective Smith]:       No, it did not.

[Prosecutor]:       Why not?

[Detective Smith]:       Because it appeared to be the same – Melissa's hair.

(Trial Transcript ("TT") VII, 02/01/06, pp. 43-44, docket #19.)

Under MRE [Michigan Rule of Evidence] 702, which governs the admissibility of expert testimony, the witness must be an expert, there must be facts in evidence that require or are subject to examination and analysis by a competent expert, and there must be knowledge in a particular area that belongs more to an expert than an ordinary person.  The testimony of Detective Smith was nothing more that his observation that the hair found on the victim's body looked as if it could have come from the victim.  Therefore, the trial court did not err in failing to give an expert witness instruction with regard to Detective Smith.  Furthermore, because the instruction was not warranted, Petitioner's trial counsel was not ineffective in failing to request such an instruction.

In claim V, Petitioner asserts that the prosecutor used perjured testimony by Detective Smith and used facts not in evidence in her closing argument.  Misconduct by a prosecutor can rise to the level of a due process violation.  *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989).  However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial.  *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993).  The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt.  *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir.

1982) (*en banc*).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'"  *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

For relief to be granted, the prosecutorial misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  The Court has emphasized a series of factors to be evaluated in determining whether prosecutorial misconduct so infected the trial as to amount to a violation of due process:  (1) whether the comments were isolated or pervasive, (2) whether they were deliberately or accidentally placed before the jury, (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant, (4) whether the prosecutor manipulated or misstated the evidence, (5) the strength of the overall proof establishing guilt, (6) whether the remarks were objected to by counsel and (7) whether a curative instruction was given by the court.  *See Darden*, 477 U.S. at 182-83; *United States v. Young*, 470 U.S. 1, 12-13 (1985); *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

In a recent decision, the Sixth Circuit addressed the issue of whether prosecutorial misconduct violated a habeas corpus petitioner's right to a fair trial:

> The Supreme Court has explained that "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."  *Dowling* [*v. United States,* 493 U.S. 342, 352 (1990)].  Accordingly, the Court has "defined the category of infractions that violate 'fundamental fairness' *very narrowly.*"  *Id.*

> (emphasis added). In particular, the Court has recognized that "the
> *Darden* standard is a very general one, leaving courts 'more leeway
> ... in reaching outcomes in case-by-case determinations.' " *Parker* [*v.*
> *Matthews,* 132 S.Ct. 2148, 2155 (2012)] (ellipses in original)
> (quoting *Yarborough* [*v. Alvarado,* 541 U.S. 652, 664 (2004)]).

*Blackmon v. Booker*, 2012 WL 4774510, 15 (6th Cir. 2012).

Petitioner asserts that because the testimony of Detective Smith and Fannie Coleman differed as to the discovery of Petitioner's sweatshirt, Detective Smith must have been lying and the prosecutor must have known that his testimony was false.  During the preliminary examination, Detective Smith testified that police had obtained a silent observer tip indicating that Petitioner had been seen at 1706 Francis stuffing a bloody sweatshirt inside a hollow tree in the back yard. Detective Smith further testified that the sweatshirt was discovered inside a hollow tree at 1706 Francis, which is also the address of Fannie Coleman.  (TT PE, 08/31/05, p. 120, docket #12.) During trial, Detective Smith reiterated his testimony regarding the sweatshirt.  (TT VII, 02/01/06, pp. 40-41, docket #19.)

During the preliminary examination, Fannie Coleman testified that Petitioner had left the sweatshirt on the ground by her neighbor's car and that she did not see the police come and get the shirt.  (TT PE, 08/31/05, pp. 83, 85, docket #12).  During trial, Coleman testified that she saw Petitioner wearing the sweatshirt, saw him take it off, and then saw the shirt on the ground by her neighbor's car a day or so later.  Coleman further testified that she mentioned the shirt to detectives and did not see it after that.  She did not observe where the detectives found the shirt.  (TT IV, 01/27/06, pp. 71-72, docket #16.)

Contrary to Petitioner's assertion, Fannie Coleman's testimony does not contradict that of Detective Smith.  Coleman did not see where detectives found the shirt.  The fact that she saw

- 21 -

it near her neighbor's car at some point does not mean that Petitioner did not subsequently move it to the hollow tree.  Petitioner fails to allege any facts showing that Detective Smith committed perjury or that the prosecutor was aware of that fact.  Petitioner's claim that his counsel was ineffective for failing to discover that Detective Smith was lying is likewise without merit as there is no indication that Detective Smith was not being truthful in his testimony.

Petitioner also asserts that the prosecutor relied on facts not in evidence in her closing argument when she stated, "1:09 to 1:52 he's out partying with these guys.  He leaves the car probably when Irma sees him about 1:30 she says." (TT IX, 02/03/06, p. 54, docket #23.)  However, during trial, Irma Gomez testified that at approximately 1:45 a.m., she saw a car containing four black men arrive.  Gomez further testified that one of the men was wearing a black jacket with red on it and a red hat and that the other men were wearing black.  (TT VIII, 02/02/06, pp. 22-24, docket 20.)  In the opinion of the undersigned, the fact that the prosecutor's statement was off by fifteen minutes does not rise to the level of prosecutorial misconduct.  Nor was Petitioner's counsel ineffective for failing to object to this statement during the prosecutor's closing argument.

In claim VI, Petitioner contends that there was insufficient evidence to support his murder conviction and that the conviction goes against the great weight of the evidence.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may

not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

For a due process challenge to the sufficiency of the evidence, under § 2254(d)(1), a writ of habeas corpus may be granted if the court concludes that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under § 2254(d)(2), the court presumes correct the factual findings made by the state court, *see* § 2254(e)(1), unless the petitioner rebuts the presumption with clear and convincing evidence. *Warren*, 161 F.3d at 360-61.

Under Michigan law, first-degree murder requires a showing that the defendant's actions caused the victim's death, that the defendant intended to kill the victims, and that "the act of killing was premeditated and deliberate." *People v. Anderson,* 209 Mich. App. 527, 537, 531 N.W.2d 780 (1995). "Although there is no specific time requirement, sufficient time must have elapsed to allow the defendant to take a 'second look.'" *People v. Plummer,* 229 Mich. App. 293, 300, 581 N.W.2d 753 (1998). "Premeditation and deliberation may be inferred from the circumstances, and minimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v. Lewis (On Remand),* 287 Mich.App 356, 365; 788 NW2d 461 (2010), aff'd in part and vacated in part on other grounds, 490 Mich. 921 (2011). The factors to be considered include the defendant's previous relationship with the victim, the defendant's actions before and after the crime,

and the circumstances surrounding the killing, including the weapon used and the location of the

wounds inflicted. *Plummer,* 229 Mich. App. at 300.

        In the opinion of the undersigned, there is sufficient evidence to support Petitioner's

first-degree murder conviction. Petitioner knew Melissa Friar because of her prior relationship with

his half-brother and the fact that Jonathan is his nephew. (TT V, 01/30/06, pp. 68-69, docket #17.)

As noted by Respondent, Petitioner's fingerprints and the blood on his sweatshirt and shoes placed

him at the scene. (TT VI, 01/31/06, pp. 103-04, 106-08, docket #18; TT VIII, 02/02/06, p. 48,

docket #20.) Evidence Technician Lutts testified that the blood spatter on top of Petitioner's shoes

would be nearly impossible if Petitioner had merely walked through the scene, as he claimed. ( TT

VIII, 02/02/06, p. 39, docket #20.) Melissa was stabbed to death with two different knives, and her

daughter was suffocated. (TT III, 01/26/06, p. 31, docket #15; TT IV, 01/27/12, pp. 19, 29, and 36,

docket #16; TT V, 01/30/06, pp. 20-22, docket #17.) One of the knives appears to have broken, as

the bloody handle was found in the open silverware drawer. The second knife was found in the

bedroom. (TT V, 01/30/06, pp. 20-22, docket #17.) There were "copious amounts of blood all over

the kitchen," where Melissa's body was discovered. (TT III, 01/26/06, pp. 30-32, 43-44, docket

#15.) Alana was discovered in the bathroom tub with a plastic bag around her head and blood

coming out of her mouth. (TT III, 01/26/06, p. 45, docket #15.) Dr. Start testified that suffocation

takes between two and five minutes to kill someone, past the point of unconsciousness. (TT IV,

01/27/06, pp. 19-20, docket #16.)

        In her closing argument, the prosecutor summarized the evidence:

> Now, [the police] go in and they find the scene. Again, that's
> undisturbed blood. And I want you to look at that picture again, ladies
> and gentlemen, of the knife drawer with the broken blade (indicating).

Of course, there's an officer wearing one of his booties. I want you to consider that piece of evidence when you're considering premeditation. When the knife blade breaks off and you actually have to go hunt out another knife to finish off the job, ladies and gentlemen, that is time for thought, reflection, and to think about killing her beforehand.

And, of course, we know that the person who then got this knife (indicating) to finish off the job ended up in her bedroom. Obviously, the intent wasn't just to kill, the intent was to get something else afterward. And they just accidentally left that knife behind.

Alana is found in the bathroom off the kitchen. Again, she was asphyxiated. The shoe prints on the floor, however, are not bloody. And that's why I asked the defendant, "Did you kill her first?" His prints are in there. And there are drops of blood on the photograph of the footprint in the bathroom. But – and this is the tile from the bathroom (indicating) I'm showing you in Exhibit 91 – but Alana bit her tongue, bit all the way down in there, there was blood from that. There's no blood in the shoe print. Did he kill her first? The evidence seems to point to that fact. And if he killed her first, then does that not show premeditation and an intent to kill right from the beginning?

The fact that he had to go get a grocery bag to put over her head when he's strangling her shows premeditation, deliberation. If you're just angry at someone and you go for the throat, you don't get the presence of mind to go, wait a minute, I'm going to go get something to make this even better and put it over her head. In fact, ladies and gentlemen, why use a grocery bag if you're going to use that much force on her neck? I submit to you it's because he didn't want her to see who he was or that he didn't want to watch her die. But Alana, that milky bag is still pretty transparent, and I submit to you, ladies and gentlemen, that the last face that she saw before that bag went over her head was the defendant's.

(TT IX, 02/03/06, pp. 37-38, docket #23.)  Based on the foregoing, the undersigned concludes that

the evidence is more than sufficient to support Petitioner's first-degree murder convictions.

Petitioner also claims that his conviction was against the great weight of the evidence.

However, as stated by the United States Supreme Court, the only relevant question is whether, after

- 25 -

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. As noted above, Petitioner's convictions are supported by sufficient evidence.

In claim VII, Petitioner states that he was "denied his right of confrontation by the erroneous admission of Christine Steepleton's Michigan State Police Footwear Analysis, Laboratory Report into evidence, and the effective assistance of counsel." As noted above, this issue is barred by Petitioner's procedural default. Petitioner argues that his counsel was ineffective in opening the door during cross-examination for the prosecutor to introduce an exhibit on re-direct, and for counsel's failure to object to the exhibit. However, Petitioner fails to allege any facts indicating that the lab report was inaccurate or that the contents of the report were such that the admission of the report changed the outcome of the trial. As noted above, the court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. In the opinion of the undersigned, Petitioner has not succeeded in making such a showing. Therefore, Petitioner's appellate counsel was not ineffective in failing to raise this issue in Petitioner's direct appeal.

Finally, Petitioner claims that the cumulative effect of the errors denied him a fair and impartial trial. Although Sixth Circuit precedent supports the proposition that errors that are harmless in isolation may require reversal when taken together, *see United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000); *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.1983), no United States Supreme Court precedent recognizes the cumulative error doctrine. Under the AEDPA, a court only

- 26 -

may grant habeas relief based on a misapplication of Supreme Court law. *Bailey*, 271 F.3d at 655. Both because he has failed to demonstrate any errors to aggregate and because his claim depends on non-Supreme Court precedent, Petitioner is not entitled to habeas corpus relief on this ground. *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004).

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 12, 2012